IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:15-CV-132-FL

| | |
|---|---|
| MARVIN N. MCFADYEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| NEW HANOVER COUNTY; NEW | ) |
| HANOVER COUNTY BOARD OF | ) |
| ELECTIONS; NORTH CAROLINA | ) |
| STATE BOARD OF ELECTIONS; | ) |
| JOSHUA B. HOWARD, in his official | ) |
| capacity; RHONDA K. AMOROSO, in | ) |
| her official capacity; JOSHUA D. | ) |
| MALCOLM, in his official capacity; | ) |
| JAMES L. BAKER,[1] in his official | ) |
| capacity; and MAJA KRICKER, in her | ) |
| official capacity, | ) |
| | ) |
| Defendants. | ) |

This matter comes before the court on the motion to dismiss filed by defendants State Board of Elections; Joshua B. Howard; Rhonda K. Amoroso; Joshua D. Malcolm; James L. Baker; and Maja Kricker (collectively "the SBE defendants"), pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted. (DE 43). Also pending are motions to dismiss by defendants New Hanover County and New Hanover County Board of Elections ("NHCBE"), (DE 41, 45). The motions have been briefed fully, and in this posture, the issues raised are ripe for

---

[1] Paul J. Foley, formerly of the State Board of Elections ("SBE"), was named as a defendant in plaintiff's amended complaint. On July 15, 2015, Foley resigned from the SBE, and on August 14, 2015, Governor Pat McCrory announced the appointment of James L. Baker to Foley's seat on the SBE. Because Foley was sued only in his official capacity, Baker, as his replacement, is automatically substituted as a defendant pursuant to Fed. R. Civ. P. 25(d). The court amends the caption, and future filings should so reflect.

ruling. For the reasons that follow, the SBE defendants' motion is granted with respect to plaintiff's claim arising under 42 U.S.C. § 1983 and the associated claim for attorney's fees under 42 U.S.C. § 1988, and the court declines to exercise supplemental jurisdiction over plaintiff's remaining claims.

Accordingly, the court remands the action to state court without reaching the remaining arguments for dismissal raised by the SBE defendants, or the motions to dismiss filed by defendants New Hanover County and NHCBE. (DE 41, 45).

## STATEMENT OF THE CASE

Plaintiff filed this action on May 14, 2015 in the Superior Court of New Hanover County, North Carolina. (DE 1). Defendants jointly moved for removal to this court on June 17, 2015 on the basis of federal question jurisdiction. Between July 14 and July 24, 2015, all defendants filed motions to dismiss for failure to state a claim. (DE 26, 28, 31). In response, plaintiff amended the complaint on August 3, 2015. (DE 33). On August 10, 2015, by text order, the court terminated as moot defendants' motions to dismiss, in light of the amended complaint.

Plaintiff raises several claims against defendants arising out of plaintiff's termination as New Hanover County director of elections, hereinafter "county director of elections." Plaintiff's § 1983 claim, the claim analyzed in this instant order, alleges that the SBE defendants violated plaintiff's constitutional right to due process during the course of the termination proceedings. Plaintiff seeks injunctive relief against the SBE defendants, and attorney's fees under § 1988. On September 16, 2015, all defendants filed motions to dismiss the amended complaint for failure to state a claim. (DE 41, 43, 45). On October 12, 2015, a text consent order was entered, dismissing a claim for declaratory relief against the SBE defendants.

2

## STATEMENT OF THE FACTS

On May 2, 2011, plaintiff was nominated by defendant NHCBE as the county director of elections. On May 3, 2011, the nomination was approved, and the SBE defendants officially appointed plaintiff to the position. Until July 2013, plaintiff received positive written performance evaluations. In April 2013, newly elected Governor Pat McCrory appointed new members to the SBE, and the SBE, in July 2013, in turn appointed new members of the NHCBE. Plaintiff immediately found himself at odds with the newly appointed chairman of the NHCBE, John Ferrante, who began attempting to take over plaintiff's duties, minimizing plaintiff's role as county director of elections, and undercutting plaintiff's authority as a supervisor. Defendant NHCBE ceased issuing plaintiff performance evaluations, but at no time prior to December 2014 did defendant NHCBE notify plaintiff he risked termination. On September 30, 2014, defendant NHCBE conducted interviews with its employees outside plaintiff's presence, encouraging these employees to discuss plaintiff. Defendant New Hanover County assisted defendant NHCBE with the collection of material critical of plaintiff, which became part of plaintiff's personnel file.

In November 2014, plaintiff became aware that military ballots and voter registration applications emailed to his NHCBE email address during the recent election had been released by defendant New Hanover County, under that defendant's asserted policy of copying all emails to and from county department heads onto a public terminal permitting public viewing of the emails, unless said emails were marked confidential. Plaintiff previously was unaware of such a policy, and contends that he never received any notice of the need to mark emails confidential to prevent public posting. Once plaintiff was notified of the ballot leak, he worked to remove the confidential information from public terminals.

3

On January 7, 2015, however, defendant NHCBE summoned plaintiff to a closed session in order to seek his removal. Defendant NHCBE informed plaintiff he had the option of resigning on the spot, or facing a termination petition released to the media and sent to the SBE defendants. Defendant NHCBE refused to show plaintiff the petition, nor was he informed in any way of the allegations contained within. He was given no opportunity by defendant NHCBE to respond to the charges contained within the petition. When plaintiff refused to resign, the NHCBE voted to send the petition to the SBE defendants seeking plaintiff's official termination.

That same day, January 7, 2015, defendant NHCBE forced plaintiff to leave the premises and return all NHCBE property, and defendant New Hanover County shut down plaintiff's access to email, servers, and files. Additionally, defendant NHCBE released the termination petition to local newspapers and broadcast news organizations. The information contained within the petition included the information gathered and maintained in plaintiff's personnel file by defendants NHCBE and New Hanover County, and referenced "half-truths, falsities, innuendo, character assassination, and unsubstantiated accusations" (Am. Compl. ¶ 41), including a purportedly false accounting of plaintiff's participation in the ballot leak, and employee quotations calling plaintiff "intimidating," "oblivious," and "lack[ing] respect for women." (Id. ¶ 45). Further, defendant NHCBE released statements within the petition detailing plaintiff's then pending, now dismissed, November 15, 2014, charge of assault on a female, and terming plaintiff an employment risk with the potential to generate NHCBE liability for "sexual harassment; retaliation; discrimination based on sex, race/color or disability; abuse and intimidation," and "emotional distress" legal claims. (Id. ¶ 46). After receiving the petition from defendant NHCBE, the news organizations published it. Plaintiff

4

contends he has incurred lost wages and damage to his reputation as a result of this publication, as he was provided no opportunity to respond publicly to the charges.

Sometime between January 7, 2015, and January 28, 2015, the SBE defendants received the termination petition from defendant NHCBE. The SBE Deputy Director sent a copy to plaintiff, providing him with the opportunity to respond in writing, before the SBE defendants formally terminated plaintiff. On January 28, 2015, plaintiff provided a written response to the SBE defendants, denying the allegations contained within the petition, and indicating opposition to the Deputy Director, rather than the Executive Director, of the SBE rendering any termination decision.

On February 4, 2015, the Deputy Director rendered a decision on behalf of SBE terminating plaintiff on the basis of "failure to prevent military ballots received by email from being automatically posted to the county's public terminal and for denying that he [plaintiff] had received any training or seen any policy notifying him that such communications would be posted to the public terminal." (Am. Compl. ¶ 69). On February 8, 2015, plaintiff wrote the SBE defendants attempting to appeal the decision on the grounds that it violated the termination procedures outlined in N.C. Gen. Stat. § 163-35. The SBE defendants then informed plaintiff that he possessed no appeal rights. Defendant NHCBE treated the SBE decision as final, and replaced plaintiff as county director of elections. On May 14 2015, plaintiff initiated the instant action.

**COURT'S DISCUSSION**

A.   Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint

5

contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.   Analysis

Plaintiff asserts a claim under 42 U.S.C. § 1983, on the basis of deprivation of due process rights guaranteed by the Fourteenth Amendment. In order to prevail on such a claim, plaintiff must demonstrate a cognizable liberty or property interest; the deprivation of that interest by state action; and, that the procedures employed to deprive plaintiff of that interest were inadequate constitutionally. See Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011). "Procedural due process provides merely a guarantee of fair procedures–typically notice and an opportunity to be heard." Id. at 528-29 (internal citation omitted). In the amended complaint, plaintiff frames the interest as a "property interest protected by the federal Constitution in his continued employment as Director of Elections" (Am. Compl. ¶ 89), but in plaintiff's memorandum in opposition to the SBE defendants' motion to dismiss, plaintiff characterizes his claim as premised on a liberty interest implicated by the public announcement of the reasons for his discharge. (Pl. Mem., DE 50 at 3). The court addresses each interest in turn.

6

### 1. Property Interest in Continued Employment

To the extent that plaintiff raises a property interest claim in the complaint, he relinquishes it in his memorandum. (Pl. Mem. at 4-5) ("[T]his is not a case about whether the government employer failed to provide the employee a pre-termination hearing to provide due process before depriving him of an interest in continued employment; it is a case about the SBOE failing to provide [plaintiff] a meaningful opportunity to be heard, in the form of a hearing, to clear his name of false charges released to the media."). In any event, plaintiff fails to satisfy his burden in pleading such a claim. An employee with a state-created property interest in employment "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1463 (4th Cir. 1990) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985)). The SBE defendants do not dispute that plaintiff possessed a property right in his continued employment, but it is also undisputed that the SBE defendants provided plaintiff with due process prior to terminating him, the sole action plaintiff has pleaded the SBE defendants performed.

The SBE defendants received the termination petition from defendant NHCBE, and provided plaintiff the opportunity to write a response to the allegations against him, prior to rendering the official termination decision. (Am. Compl. ¶¶ 64-67). Only after receiving plaintiff's response, did the SBE defendants terminate plaintiff, stating the grounds for termination as "failure to prevent military ballots received by email from being automatically posted to the county's public terminal and for denying that he [plaintiff] had received any training or seen any policy notifying him that

7

such communications would be posted to the public terminal." (Am. Compl. ¶ 69). Plaintiff was given an opportunity to be heard, and the SBE defendants found the occurrences associated with the inadvertent ballot leak alone to be grounds for plaintiff's termination. Plaintiff does not dispute that a ballot leak occurred, but he does deny receiving a policy that, had it been adhered to, would have prevented the leak. (Id. ¶¶ 22-28). The wisdom of the SBE defendants' decision concerning responsibility for a ballot leak is not within the court's purview in addressing whether the procedures followed comport with procedural due process guarantees. Accordingly, plaintiff fails to plead facts sufficient to demonstrate that his procedural due process rights, with respect to any property interest in continued employment, were violated.

        2.        Deprivation of Liberty Interest Due to Failure to Follow Statutory Procedure

Plaintiff contends the SBE defendants failed to afford him due process in depriving him of a liberty interest in reputation and choice of occupation. It is undisputed that a deprivation of some liberty interests can give rise to procedural due process rights. See Sciolino v. City of Newport News, Va., 480 F.3d 642, 645-46 (4th Cir. 2007). The SBE defendants argue, however, that plaintiff was afforded the process due from them. Plaintiff contends the SBE defendants deprived him of due process because: 1) the Deputy Director of the SBE, rather than the Executive Director, rendered the final termination decision; and 2) the SBE defendants failed to defer the decision and provide the discretionary, formal hearing rights associated with such a deferral. (Am. Compl. ¶¶ 93-97). The complaint specifically alleges:

> The SBOE, by and through its members, permitted the Deputy Director to issue a public decision on the Petition faulting [plaintiff]'s conduct and character in the performance of his duties, which was contrary to state law and beyond the Deputy Director's authority, without giving [plaintiff] the formal hearing that state law required. Those actions damaged [plaintiff]'s liberty interests in his reputation and choice of occupation.

Case 7:15-cv-00132-FL   Document 54   Filed 01/14/16   Page 8 of 14

(Id. ¶ 99).

N.C. Gen. Stat. § 163-35 outlines the manner by which county directors of election are appointed and terminated, and deems directors, like plaintiff, to be county employees. Pursuant to N.C. Gen. Stat. § 163-35, the Executive Director of the SBE is required to provide a county director of elections with a copy of any county termination petition, and provide an opportunity for that county director to respond in writing, prior to rendering an official termination decision. The statute additionally provides the SBE defendants with the opportunity to defer the Executive Director's decision, and conduct an in-person hearing with the county director.

        a.        Deputy Director Rendering Final Termination Decision

N.C. Gen. Stat. § 163-35 unquestionably names the Executive Director as the individual responsible for carrying out the termination of a county director of elections, and as a result, plaintiff asks the court to find the SBE defendants violated the Due Process Clause when they failed to adhere to the letter of the state's own rules. See Riccio, 907 F.2d at 1466. To the extent that plaintiff claims a procedural irregularity in having the Deputy Director, rather than the Executive Director, providing plaintiff with the opportunity to respond and ultimately rendering the termination decision, such designation is irrelevant to the due process inquiry. N.C. Gen. Stat. § 163-35 does not specify what procedure must be followed when the Executive Director initially is unable or unwilling to render a decision.

It is well established that a state does not violate the Constitution every time it violates one of its own rules. See Riccio, 907 F.2d at 1466 (citing Olim v. Wakinekona, 461 U.S. 238, 249-50 (1983)). Plaintiff cannot rely on the fact that a violation of state law may have occurred, when such a violation, purported failure to adhere to the termination procedures outlined by N.C. Gen. Stat. §

9

163-35, does not constitute a due process violation. Instead, plaintiff must plead facts that would allow the court to conclude that the elements of a due process claim are met, regardless of whether the interest at stake is liberty or property.

As set forth above, the SBE defendants afforded plaintiff sufficient notice and opportunity to be heard to satisfy the constitutional requirements of due process. The court makes no finding with respect to what the statute requires when an Executive Director is unable or unwilling to make the initial termination decision. Accordingly, plaintiff's contentions that the SBE defendants substituted the Deputy Director for the Executive Director do not state a § 1983 claim.

        b.        Failure to Defer and Grant Hearing

Plaintiff also contends that the SBE defendants violated his due process rights when they chose not to defer the decision of the Deputy Director, and did not grant plaintiff a hearing. Plaintiff argues that the SBE was under an obligation to defer the decision when the Executive Director was unable to render the termination decision personally. N.C. Gen. Stat. § 163-35 makes the choice to defer and grant a hearing discretionary. If the decision is deferred, any one or more members of the SBE designated by the remaining members may conduct the hearing and make a final determination about termination.

A government employer is not required to perform all pre-termination acts that could possibly benefit the employee subject to discharge. Riccio, 907 F.2d at 1464. Accordingly, it is irrelevant to this court's inquiry whether the SBE defendants declined to exercise their discretion to grant plaintiff more process than is required by the Constitution.

10

Case 7:15-cv-00132-FL   Document 54   Filed 01/14/16   Page 10 of 14

### 3. False Announcement Made Public by the Employer

Plaintiff contends the release of the termination petition by defendant NHCBE caused damage to his standing in the community and his reputation, such that future employment opportunities are impaired. Such damage to reputation may implicate a liberty interest, and plaintiff alleges that the SBE defendants failed to provide him with "procedural due process before taking action to threaten his liberty interests in his reputation and choice of occupation." (Am. Compl. ¶ 92).

A Fourteenth Amendment liberty interest is implicated when a public employer publicly announces the reasons for an employee's discharge. Sciolino, 480 F.3d at 645-46. To state this type of liberty interest claim (hereinafter, "public announcement claim"), plaintiff must plead facts demonstrating "the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Id. at 646. The complaint fails to satisfy the second element outlined by Sciolino, as plaintiff has not pleaded facts demonstrating that these particular defendants, the SBE defendants, are responsible for the "false charges released to the media" giving rise to plaintiff's harm. (Pl. Mem. at 4-5).

As an initial matter, the publication of the stigmatizing charges was made prior to the SBE defendants ever receiving the petition from defendant NHCBE. In particular, plaintiff claims defendant NHCBE publicly released the termination petition the same day the chairman of NHCBE attempted to force plaintiff's resignation. (Am. Compl. ¶¶ 32-39). There are no allegations that the SBE defendants made public any of the alleged slanderous material contained within the petition. Indeed, plaintiff admits "[t]he vast majority of the 44 pages of personal attacks and innuendo

11

included in the Petition were ignored," by the SBE in making the termination decision. (Am. Compl. ¶ 70). Plaintiff does not plead facts demonstrating that the final termination decision by the Deputy Director, occurring after the release of the petition, was publicized, nor, does he contend that the official decision was the cause of the harm to his reputation and ability to secure future work. The complaint focuses entirely on the public release of the petition and its "false charges." While plaintiff terms the SBE defendants' termination decision "public," the court is not required to accept conclusory statements as true, when the amended complaint includes no facts to support the conclusory characterization. (Am. Compl. ¶ 97).

Moreover, even if the SBE defendants announced plaintiff's termination, the decision was limited to leaked emails and the ballot issue, and did not touch on the more controversial allegations made by defendant NHCBE constituting the "false charges released to the media." (See id. ¶¶ 32-47; cf. ¶ 69). Plaintiff suggests by inference that the SBE defendants may be held liable for the actions of the other defendants. It is well settled, however, that vicarious liability is inapplicable to § 1983 suits, and public officials may not be held liable for the unconstitutional conduct of their purported subordinates under a theory of respondeat superior. Iqbal, 556 U.S. at 676. To prevail in a § 1983 suit, the plaintiff must plead that each government defendant, through its own actions, violated the Constitution. Id. Or, plaintiff must plead that the SBE defendants, as supervisors, were indifferent to or tacitly authorized the misconduct of others. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

The complaint fails to allege that the SBE defendants are liable as the supervisors of defendant NHCBE, or that these defendants acted in concert. Because supervisory liability can extend to the highest levels of state government, a plaintiff must pinpoint the persons in the decision-

12

making chain whose deliberate indifference permitted constitutional abuses to continue unchecked. Id. Three elements must be pleaded to establish supervisory liability under § 1983. First, plaintiff must demonstrate that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury. Id. at 799. Second, the facts must allege that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices. Id. Third, there must be an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered. Id. Plaintiff's amended complaint satisfies none of these elements.

Because plaintiff has not pleaded facts demonstrating that the SBE defendants can be held responsible for the publication of false charges that allegedly stigmatized his reputation, plaintiff's § 1983 claim, the second claim, fails to state a claim upon which relief can be granted. Plaintiff's sixth claim for attorney fees under § 1988 is tied to plaintiff's § 1983 claim, and cannot stand alone. Accordingly, it too must be dismissed.

    4.    Supplemental Jurisdiction Over Plaintiff's Remaining Claims

It is noted that pursuant to a consent order entered October 12, 2015, plaintiff's third claim for relief, a claim for declaratory judgment, has been dismissed as to the SBE defendants, leaving only a state law contract claim against the SBE defendants, and state law constitutional, common law, and contractual claims against defendants New Hanover County and NHCBE. Because the court resolves by dismissal plaintiff's only federal claim in the instant order, the court declines to exercise supplemental jurisdiction over the remaining claims. Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state law claim, if the claim raises a novel or complex issue of state law, or if the district court has dismissed all claims over

which it has original jurisdiction. The court has original jurisdiction over plaintiff's second cause of action, because it implicates § 1983. For the reasons stated herein, this claim, however, fails to state a claim upon which relief can be granted and must be dismissed. In addition, the state law claims raise novel and complex issues of North Carolina state law. Accordingly, the court declines to exercise supplemental jurisdiction over the remaining claims.

## CONCLUSION

Based on the foregoing, the SBE defendants' motion to dismiss is GRANTED, with respect to plaintiff's federal claims, the second and sixth claims for relief. (DE 43). Accordingly, the court declines to exercise supplemental jurisdiction over plaintiff's remaining claims, and such remaining claims are REMANDED to the Superior Court of New Hanover County, North Carolina. The clerk is DIRECTED to close the case.

SO ORDERED, this the 14th day of January, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge